978 F.2d 714
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
Capacity, Plaintiff-Appellee,
v.
Harvey MYERSON, Defendant-Appellant.
 No. 92-55351.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 23, 1992.*
Decided Oct. 29, 1992.
 
 Before SNEED, BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Harvey Myerson appeals pro se the district court's denial of Myerson's Fed.R.Civ.P. 60(b) motion to set aside the default judgment entered against Myerson. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 On April 30, 1990, Myerson executed and delivered to The Merchant Bank of California ("Bank") an unsecured promissory note ("Note") in the principal amount of $299,750. On June 8, 1990, the Superintendent of Banks of California closed the Bank and appointed the Federal Depository Insurance Corporation ("FDIC") as receiver for the Bank. The FDIC acquired the Note as part of a purchase and assumption transaction arranged by the receiver.
 
 
 5
 On April 10, 1991, the FDIC filed a complaint against Myerson to collect on the Note in the amount of $299,750 plus accrued interest, attorneys' fees, and costs. Myerson was served personally with the complaint on May 2, 1991. Pursuant to Fed.R.Civ.P. 12(a), Myerson's answer was due May 22, 1991.
 
 
 6
 Myerson failed to file a timely answer. On July 9, 1991, the FDIC filed a request for entry of default against Myerson for failure to answer and mailed a copy of the request to Myerson. The district court entered Myerson's default on July 10, 1991. The district court granted default judgment against Myerson on August 19, 1991 in the amount of $357,671.47. On August 20, 1991, Myerson moved to set aside the default judgment. On February 11, 1992, the district court denied Myerson's motion, finding that Myerson "failed to establish excusable neglect or a meritorious defense." Myerson timely appealed.
 
 II
 Standard of Review
 
 7
 "We review for clear error the district court's factual findings with respect to Rule 60(b) motions to set aside a default judgment." Price v. Seydel, 961 F.2d 1470, 1473 (9th Cir.1992). We will reverse a district court's denial of a motion to set aside " 'only upon a clear showing of abuse of discretion.' " Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 690 (9th Cir.1988) (quoting Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir.), cert. denied, 484 U.S. 479 (1987)).
 
 
 8
 A district court's discretion in granting or denying a Rule 60(b) motion is limited by three considerations: (1) Rule 60(b) is a remedial measure, which should be applied liberally, (2) default judgments are generally disfavored, and (3) where a defendant submits a timely request for relief and has a meritorious defense, the court should resolve any doubts in favor of setting aside the default judgment. Hammer v. Drago (In re Hammer), 940 F.2d 524, 525 (9th Cir.1991).
 
 
 9
 A district court has discretion to deny a motion to set aside a default judgment where (1) defendant's culpable conduct led to the entry of default, (2) defendant has no meritorious defense, or (3) plaintiff would be prejudiced if the judgment is set aside. Id. at 525-26; Cassidy v. Tenorio, 856 F.2d 1412, 1415 (9th Cir.1988). "This tripartite test is disjunctive." In re Hammer, 940 F.2d at 526. Therefore, a finding that any one of these three factors is present "is sufficient to justify the district court's refusal to vacate a default judgment." Cassidy, 856 F.2d at 1415. The defendant bears the burden of proving that Rule 60(b) relief is justified and that a meritorious defense exists. Id.
 
 III
 Merits
 A. Excusable Neglect
 
 10
 Myerson contends the district court abused its discretion by denying his motion to set aside the default judgment. Myerson contends his status as a pro se defendant and non-resident attorney,[1] his difficulty in securing counsel, his belief that the district court granted his extension, and his filing of his answer one month after the original extension of time agreed to by the FDIC expired demonstrate excusable neglect. These contentions lack merit.
 
 
 11
 A defendant's conduct is culpable if he receives notice of the filing of the complaint and fails to answer. In re Hammer, 940 F.2d at 526. Where a defendant fails to answer within 20 days of service, the district court may enter a default judgment. See Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986), opinion amended, 807 F.2d 1514, cert. denied, 484 U.S. 870 (1987).
 
 
 12
 Here, Myerson was served personally with a copy of the complaint on May 2, 1991. As a lawyer, Myerson "presumably was well aware of the dangers" of failing to answer timely. See Direct Mail, 840 F.2d at 690. At Myerson's request, the FDIC orally agreed to extend the date to answer from May 21, 1991 to June 28, 1991. Although the FDIC prepared and sent Myerson a joint written stipulation regarding the extension, Myerson failed to sign or return it to the FDIC or the district court.[2] Thus, no extension was ever filed with the district court or signed by the judge, as required by the local rules.
 
 
 13
 On July 1, 1991, Myerson sought from the FDIC's counsel an additional extension of time to July 29, 1991. The FDIC opposed. On July 12, 1991, after Myerson's time to answer had expired and after the initial 30-day extension had expired, Myerson applied to the district court for an additional 30-day extension.[3]
 
 
 14
 In his motion to set aside the default judgment, Myerson argued that he was not culpable because he had difficulty in securing counsel and made a good faith effort to answer the complaint. Myerson based his "good faith belief" that the court had granted his request for extension on the fact that he "received no notice that his application for an extension had been rejected."[4] Given the facts, the district court did not commit clear error in finding that Myerson failed to demonstrate excusable neglect. See Price, 961 F.2d at 1473. Therefore, the district court did not abuse its discretion in denying Myerson's motion to set aside the default judgment. See Cassidy, 856 F.2d at 1415.
 
 B. Meritorious Defense
 
 15
 Myerson contends the district court abused its discretion by denying his motion to set aside the default judgment because he presented a meritorious defense. This contention lacks merit.
 
 
 16
 Mere legal conclusions cannot support a decision to disturb a judgment. Hammer, 940 F.2d at 526. Moreover, general allegations without a statement of underlying facts are "insufficient to make out a colorable claim to a meritorious defense." Cassidy, 856 F.2d at 1416.
 
 
 17
 Here, Myerson's affidavit in support of his motion to set aside the default judgment acknowledged the loan but stated that he had entered a separate agreement with the Bank governing the terms of the loan. He further declared that he had complied with the terms of this separate agreement. Nevertheless, he failed to offer evidence of such agreement to the district court to support his contention.[5] In contrast, in support of its motion for entry of default judgment, the FDIC presented a copy of the Note and a copy of the payment schedule, which indicated that Myerson had not made any payment on the loan. Given the facts presented and the effect of 12 U.S.C. § 1823(e) and D'Oench, Duhme on Myerson's asserted defense, the district court did not commit clear error in finding that Myerson failed to present a meritorious defense. See Price, 961 F.2d at 1473. Therefore, the district court did not abuse its discretion in denying Myerson's motion to vacate the default judgment. See Cassidy, 856 F.2d at 1415.[6]
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Myerson is licensed to practice law in New York, where he is of counsel to a law firm. His permanent residence is in Florida
 
 
 [2]
 The FDIC requested that Myerson execute and return the stipulation so that the FDIC could file it with the district court pursuant to C.D.Cal.Local Rule 3.11, which states that written stipulations affecting the progress of a case shall be filed with the court and will not be effective until signed by a judge
 
 
 [3]
 Myerson declared that on July 29, 1991, he mailed the FDIC his answer and counterclaim. According to Myerson, the district court rejected Myerson's July 29, 1991 attempt to file the answer and counterclaim because an entry of default had already been entered. The district court docket sheet does not reflect receipt or rejection of Myerson's answer or counterclaim
 
 
 [4]
 Evidence in the record contradicts Myerson's assertions. Counsel to the FDIC stated in his affidavit that he informed Myerson during a May 29, 1991 telephone conversation that the FDIC would seek entry of default judgment against Myerson if Myerson failed to respond by June 28, 1991. Additionally, the record indicates that on July 9, 1991, the FDIC served by mail a copy of its request for entry of default judgment against Myerson for failure to respond. Myerson applied for an extension on July 12, 1991 and served his answer on July 29, 1991. In his affidavit, Myerson admits that sometime after July 12, 1991 he learned of the FDIC's request for entry of default but believed it was in response to his application for an extension
 
 
 [5]
 Any agreement asserted against the FDIC in its corporate capacity must comply with the terms of 12 U.S.C. § 1823(e), which provides that no agreement that diminishes or defeats the interest of the FDIC in an asset as security of a loan shall be valid against the FDIC unless it (1) is in writing, (2) was executed by the Bank contemporaneously with the acquisition of the asset, (3) was approved by the Bank's board of directors, as evidenced in the minutes, and (4) has been continuously an official record of the Bank. 12 U.S.C. § 1823(e). Any agreement asserted against the FDIC must comply strictly with section 1823(e). Langley v. FDIC, 484 U.S. 86, 95 (1987). Additionally, any such agreement must comply with the common law rule stating that agreements that are not in a failed bank's records may not be asserted against the FDIC. D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 460-61 (1942). Here, Myerson failed to allege or offer evidence that any of these requirements were met
 
 
 [6]
 Myerson also contends the district court erred by failing to address the lack of prejudice the FDIC would suffer if the district court granted the Rule 60(b) motion. Because we find that two of the three factors of the Cassidy were present, we need not address the issue of prejudice to the FDIC. See Cassidy, 856 F.2d at 1415 (only one of the three factors must be present for the district court to correctly exercise its discretion to deny Rule 60(b) relief)